# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAVEYON CAMPBELL,<br><br>                       Plaintiff,<br><br>   v.<br><br>JAMES G. COX, et. al.,<br><br>                  Defendants. | Case No. 3:15-cv-00194-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is the Motion for Summary Judgment of defendants Boardman, Fillman, Jones, Rigney, and Werber. (ECF No. 53; Exhibits at 53-1 to 53-20.) On February 28, 2017, the court issued an order advising that Defendants had filed motions for summary judgment (ECF Nos. 48[1], 53), which Plaintiff had failed to oppose. (ECF No. 57.) The court gave Plaintiff an additional twenty days to file a response to the motions. (*Id.*) On April 3, 2017, Plaintiff filed a motion for extension of time to respond to the motions for summary judgment. (ECF No. 58.) The following day, the court granted Plaintiff's motion, giving him up to May 5, 2017, to file a response to the motions. (ECF No. 59.) As of the date of this Report and Recommendation, no response has been filed.

After a thorough review, it is recommended that the motion be granted and that judgment be entered in favor of these defendants.

///

///

---

[1]

Defendant Deeds' motion for summary judgment has been addressed in a separate report and recommendation.

# I. BACKGROUND

Plaintiff is an inmate within the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The allegations giving rise to the complaint took place while Plaintiff was housed at Ely State Prison (ESP). (Compl., ECF No. 4.)

Plaintiff filed his original complaint on April 3, 2015, which the court screened and directed to be filed on November 13, 2015. (ECF Nos. 1-1, 3, 4.) He was given leave to amend to correct certain deficiencies in the complaint, but failed to file an amended complaint within the prescribed time period; therefore, the court ordered that the action would proceed on the claims identified in the screening order. (ECF No. 5.)

In the complaint, Plaintiff alleges that on September 25, 2014, he was in an altercation with another correctional officer, which resulted in him being shot and taken to the infirmary at approximately 9:30 p.m., but this event is not the subject of this action. (ECF No. 4 at 9.) At approximately 11:30 p.m., Plaintiff claims that defendant Werber opened Plaintiff's cell door and allowed C.E.R.T. Officers Pinkham, Rigney, Green, Boardman, Parr and Deeds to beat up Plaintiff unnecessarily. (*Id*. at 7, 9-10.) He alleges that Deeds grabbed him and squeezed his throat, while Pinkham, Boardman and Parr tackled him to the floor and started to kick him and punch him in the mouth and nose. (*Id*. at 9.) Rigney, Green, Pinkham, Parr and Deeds then began stomping on him while he was on the floor, handcuffed behind his back and not resisting. (*Id*. at 10.) Werber failed to intervene, and when Plaintiff tried to exit his cell, Werber pushed him back in and the abuse continued. (*Id*.) Plaintiff claims he suffered injuries including a black eye, bruised ribs, numbness to the hands and wrists, injury to the nose, migraine headaches and difficulty breathing. (*Id*. at 11.)

He avers that Nurse A. Scott came to his cell and Scott agreed with another officer not to provide Plaintiff with any aid. (*Id*.) He claims that Scott refused to treat Plaintiff, and instead left him on the floor bleeding. (*Id*. at 11-12.) Plaintiff also contends that Nurse Jones failed to remove shotgun pellets from Plaintiff. (*Id*. at 14.)

He goes on to allege that on September 26, 2014, Associate Warden Michael Fletcher ordered Correctional Officer Fillman to clean up blood from Plaintiff's injuries from the

previous night's attack, and Fletcher choked and threatened Plaintiff before leaving his cell. (*Id*. at 8, 15-16.) Fillman failed to intervene. (*Id*. at 16.)

The court allowed Plaintiff to proceed with an excessive force claim based on the allegation that he was attacked in his cell by Deeds, Rigney, Green, Pinkham, Boardman and Parr, and an Eighth Amendment claim against Werber for failing to intervene. He was also allowed to proceed with an Eighth Amendment claims against Scott and Jones for deliberate indifference to a serious medical need based on the alleged failure to provide medical treatment. In addition, the court found Plaintiff stated colorable Eighth Amendment claims against Fletcher and Fillman based on the allegations that Fletcher choked Plaintiff, and Fillman watched without intervening. (ECF No. 3.)

Green, Fletcher, Pinkham and Scott were dismissed without prejudice because Plaintiff failed to timely serve them pursuant to Federal Rule of Civil Procedure 4(m). (*See* ECF No. 50.) In addition, summary judgment was granted to defendant Parr on the basis that he was not present on the date Plaintiff alleged Parr used excessive force against him. (*Id.*) The undersigned has separately recommended that summary judgment be granted in favor of Deeds because he was not present when the events in question are alleged to have taken place. Therefore, the remaining defendants who move for summary judgment now are: Rigney, Boardman, Werber, Jones and Fillman.

These defendants argue that Plaintiff failed to exhaust his administrative remedies insofar as Jones and Werber are concerned, and in any event, none of the events alleged by Plaintiff ever transpired such that each of them is entitled to summary judgment. (ECF No. 53.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
>
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial.

*See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Facts**

According to Defendants, the following reflects what occurred on September 25 and 26, 2014 at ESP:

On September 25, 2016, at ESP, around 7:30 or 8:00 p.m., officers initiated a search of Plaintiff's cell after observing him drinking prison-made alcohol. (Ex R, Inspector General's Investigation Report Re: Use of Force Review, ECF No. 53-18 at 2-3; Ex H, Summary of Disciplinary Hearing at ECF No. 53-8 at 5-6.) After the search, Plaintiff and his cellmate appeared agitated and refused to comply with orders to be restrained. (*Id*.) Eventually they were both restrained and escorted to the unit showers while officers completed a search of the cell. (*Id*.) Plaintiff's cellmate was removed from the showers and returned to the cell following the search. (*Id*.) After returning to the cell, Plaintiff's cellmate was heard yelling: "It's all bad man!" across the unit to Plaintiff, who was still in the showers. (Ex R, Inspector General's Investigation Report Re: Use of Force Review, ECF No. 53-18 at 2-3) At approximately 8:00 p.m., officers attempted to remove Plaintiff from the showers, but Plaintiff slipped free of the wrist restraints as they were being applied and proceeded to assault the transporting officer by striking him in the face multiple times. (Ex H, Summary of Disciplinary Hearing at ECF No. 53-8 at 5-6; Ex R, Inspector General's Investigation Report Re: Use of Force Review, ECF No. 53-18 at 2-4.)

Another officer who observed the event attempted to diffuse the altercation by discharging a blank round and one bird shot round using a "skip shot" directed at Plaintiff. (Ex R, Inspector General's Investigation Report Re: Use of Force Review, ECF No. 53-18 at 3; Ex. J, Inspector General's Report at ECF No. 53-10 at 2-4.) Plaintiff was struck by bird shot pellets in the face, ear, side of the head and shoulder. (Ex R, Inspector General's Investigation Report Re: Use of Force Review, ECF No. 53-18 at 2-4; Ex. N, ECF No. 54 at 2 (filed under

seal).) He then complied with orders to lie face down on the floor and was restrained until additional responding officers arrived. (Ex R, Inspector General's Investigation Report Re: Use of Force Review, ECF No. 53-18 at 2-4; Ex. H, Summary of Disciplinary Hearing at ECF No. 53-8 at 5-6.)

Plaintiff was then escorted to the ESP infirmary at approximately 8:15 p.m. (Ex. N, ECF No No. 54.) He was evaluated by nursing staff. (Ex. N, ECF No. 54 at 2, 5, 9.) Initially, it was believed Plaintiff might need to receive emergency transport to the local hospital, and four members of the CERT team, Boardman, Rigney, Pinkham and Green, were called to the prison from off-duty to assist in the transport. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2; Boardman Decl., ECF No. 53-1 ¶ 9; Rigney Decl., ECF No. 53-4 ¶ 9.) It was subsequently determined that the injuries did not warrant medical transport and Plaintiff was treated at the infirmary. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2; Boardman Decl., ECF No. 53-1 ¶ 9; Rigney Decl., ECF No. 53-4 ¶ 9.)

In the infirmary, Plaintiff's wounds were cleaned and photographed. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2; Ex. N, ECF No. 54 at 2.) Nursing staff generated an unusual occurrence report and noted Plaintiff's complaint that his face hurt from the pellet wounds. (Ex. N, ECF No. 54 at 2.) Record was made of numerous pellet wounds to the face, brow, side of head, ear, superficial wounds, a small hematoma on the right side of the head as well as behind the ear, and blood on the face and neck. (Ex. N, ECF No. 54 at 2.) The report indicates that this evaluation was completed at approximately 8:55 p.m. (*Id*.) Plaintiff was admitted to the infirmary for overnight observation. (Ex. N, ECF No. 54 at 2.) The last progress note in his medical file from September 25, 2014 was made at 11:00 p.m. (Ex. N, ECF No. 54 at 6.)

There are no records of any unusual occurrences in the ESP infirmary overnight between 9:00 p.m. on September 25 and 5:00 a.m. on September 26. (Ex. N, ECF No. 54.) Boardman and Rigney were on CERT duty at ESP from 9:00 p.m. to 1:30 a.m., but do not recall interacting with Plaintiff. (Boardman Decl., ECF No. 53-1 ¶¶ 3, 9, 10-13; Rigney Decl., ECF No. 53-4 ¶¶ 3, 8-13.) Werber was stationed in the infirmary on an overtime shift from 9:00 p.m. to 5:00 a.m.,

and recalls Plaintiff being present but does not recall any interaction with him. (Werber Decl., ECF No. 53-3 ¶¶ 3, 8-16.) Nurse Jones did not work at ESP at any time on September 25 or 26, 2014. (Ex. F, shift logs, ECF No. 53-6; Jones Decl., ECF No. 53-3 ¶¶ 7-12.)

On Friday September 26, 2014, at approximately 8:45 a.m., medical staff conducted a follow-up examination of Plaintiff. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2; Ex. N, ECF No. 54 at 3, 6.) Associate Warden Fletcher noted a swollen eye and traces of blood on the infirmary cell floor. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2-3.) Fletcher left Plaintiff with the trauma room staff and returned to his office to review the report of the shotgun altercation and original photographs of Plaintiff's injuries. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2.) He was concerned about Plaintiff's swollen eye, and reported this concern to Warden Baker. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2.) Medical staff examined Plaintiff and noted the swollen left eye, and a pellet lodged in the right flank skin. (Ex. N, ECF No. 54 at 3, 6, 10.) Ibuprofen was ordered to treat his pain and he was released back to the main unit. (*Id*.)

Fletcher contacted the infirmary and asked that they evaluate Plaintiff for a possible second unusual occurrence. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2.) Plaintiff returned to the infirmary at approximately 12:15 p.m. (Ex. J at 1; Ex. N, ECF No. 54 at 3.) Nursing staff generated another unusual occurrence report noting Plaintiff's complaint that his left eye hurt from being lowered to the ground, and that his right side back hurt. (Ex. N, ECF No. 54 at 3.) Hematomas to the left eye and right side along with two pellets lodged in the ear lobe and right hand. (*Id*.) He was given an ice pack for swelling to the eye and the right side of his face was cleaned. (*Id*.)

Baker went through the infirmary at approximately 1:15 p.m. and made contact with Plaintiff, and at this time Plaintiff first told Baker that his eye was swollen and his back hurt because seven or ten CERT officers came into his infirmary cell the night before and kicked him, but he could not name any of the officers involved. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2.)

The claim was forwarded to the Inspector General for review. Plaintiff told the investigators that Deeds and another unnamed officer approached him in his cell between 12:00 a.m. and 3:00 a.m. asking to take pictures of his wounds. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2.) He claimed that Deeds did not bring the camera and directed another officer to get it, and that officer returned with other CERT officers. (*Id.*) He reported that Deeds took pictures of Plaintiff's face and when Deeds asked Plaintiff if he had any other injuries, Plaintiff told Deeds his back hurt. (*Id.*) Deeds told Plaintiff he had to take off his restraints to photograph his back. (*Id.*) At that point, Plaintiff claimed that Deeds knocked him down and the CERT officers proceeded to kick him, pull his hair and strike his nose, causing it to bleed. (*Id.*)

The investigators contacted Nurse Leisinger-Fletcher, who had examined Plaintiff on September 25 and 26, and she opined there was nothing inconsistent with the injuries observed on the 26th, including the swelling to the left eye, with the injuries he had been treated for on the 25th. (Ex. J, Inspector General's Report at ECF No. 53-10 at 2-3.) The investigators also noted in their report that Plaintiff complained of back pain to CERT before he claims he was assaulted. (Ex. J, Inspector General's Report at ECF No. 53-10 at 3.) The investigators determined that while Plaintiff claimed Deeds led the assault, the evidence indicated Deeds was not present. (*Id.*) The Inspector General ultimately concluded Plaintiff's allegations of assault were unfounded. (*Id.*)

According to Defendants, at the time of the alleged events, Werber was an officer trainee and was never a member of CERT. (Werber Decl., ECF No. 53-5 ¶¶ 3, 14, 15.) Boardman, Rigney and Werber each state that Plaintiff's accusations are false and that did not assault Plaintiff as alleged. (Boardman Decl.; ECF No. 53-1 ¶¶ 6, 8-15; Rigney Decl., ECF No. 53-4 ¶¶ 8-13; Werber Decl., ECF No. 53-5 ¶¶ 6, 8-16.)

Jones states that she was not working on the dates in question, and Plaintiff's allegations against her are false. (Jones Decl., ECF No. 53-3 ¶¶ 7-15.)

Fillman also states that he did not observe Fletcher choke or threaten Plaintiff. (Fillman Decl., ECF No. 53-2 ¶¶ 8-12.) While the complaint alleges that on September 26, 2014, Fletcher

approached Plaintiff with Fillman and ordered Fillman to clean up the blood in Plaintiff's cell, and that Fletcher proceeded to choke and threaten Plaintiff in Fillman's presence, this is contradicted by Fillman's declaration as well Plaintiff's original claim that Fletcher came to his cell accompanied by three CERT officers from the prior night, with no mention of Fillman. (Fillman Decl., ECF No. 53-2 ¶¶ 8-12; Ex. J, Inspector General's Report, ECF No. 53-10 at 2.)

**B. Analysis**

### 1. Eighth Amendment Excessive Force & Failure to Protect

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

In addition, under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)). "Having incarcerated 'persons [with]

demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (citing *Rhodes*, 452 U.S. at 347). A failure to protect claim requires a showing of deliberate indifference: that "the deprivation alleged [is], objectively, sufficiently serious" such that the prison official's conduct posed "a substantial risk of serious harm" to the inmate; and, that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 834, 837 (citations omitted).

**2. Eighth Amendment Deliberate Indifference to Serious Medical Need**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds*, *WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); see also *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

### 3. Personal Participation

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id*. (citations omitted).

### 4. Summary Judgment Should be Entered in Defendants' Favor

First, Defendants have submitted evidence that neither Boardman, Rigney nor Werber had any interaction with Plaintiff after he was admitted to the infirmary. (Boardman Decl., ECF No. 53-1 ¶¶ 6, 8-17; Rigney Decl., ECF No. 53-4 ¶¶ 8-13, 15; Werber Decl., ECF No. 53-5 ¶¶ 8-16.) Plaintiff did not file a response to Defendants' motion. Therefore, Plaintiff has not submitted any evidence to create a genuine dispute of material fact as to the participation of Boardman, Rigney or Werber in the alleged assault by the CERT team members.

Second, Defendants have submitted evidence that Jones was not even present on the dates in question. (Jones Decl., ECF No. 53-3 ¶¶ 7-9; medical shift logs at ECF No. 53-6, ECF No. 53-7.) Instead, Jones's only interaction with Plaintiff was when she saw him in the infirmary during her regularly scheduled shift on September 28, 2014, where she noted that his left eye was swollen, but he had no complaints of pain. (*Id*. ¶ 10.) She contends that at no time was she asked or did she refuse to remove bird shot pellets from Plaintiff's skin. (*Id*. ¶¶ 12-13.) Plaintiff has not produced any evidence to contradict that submitted by Jones concerning Jones' presence on the dates in question, or otherwise create a genuine dispute of material fact as to her lack of involvement in the alleged denial of medical care.

Finally, Defendants have produced evidence that: Fillman has no recollection of being asked to clean Plaintiff's cell while he was in the infirmary; Fillman did not visit Plaintiff's cell alone with Fletcher; and, Fillman did not observe Fletcher threaten or choke Plaintiff as alleged

in the complaint. (Fillman Decl., ECF No. 53-2 ¶¶ 8-12.) Defendants also point out that while Plaintiff's complaint alleges that Fillman was present when Fletcher purportedly choked Plaintiff, he previously reported that Fletcher came to the infirmary cell with three of the officers from the CERT team from the prior night, with no mention of Fillman. Nothing in Plaintiff's medical file makes reference to the alleged choking or documents any injuries arising from the purported incident. Plaintiff has submitted no evidence in response to the motion in order to support his claim or create a genuine dispute of material fact as to whether Fletcher choked him while Fillman stood by and watched.

Based on the foregoing, it is recommended that summary judgment be entered in Defendants' favor. As a result of this conclusion, the court need not address Defendants' exhaustion argument relative to Jones and Werber.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 53), and entering judgment in their favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: May 22, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE